UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 19 Cr. 830-2(AT) |
| | ) | |
| -against- | ) | |
| | ) | <u>Oral Argument Requested</u> |
| TOVA NOEL and MICHAEL THOMAS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MOTION OF MICHAEL THOMAS TO</u>
## <u>COMPEL DISCOVERY</u>

Montell Figgins, Esquire
Attorney for Defendant, Michael Thomas
The Law Offices of Montell Figgins, LLC
17 Academy Street
Suite 305
Newark, NJ 07102
973-242-4700

April 3, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................……..…...…......ii-iii

INTRODUCTION..........................................................................…......................1

BACKGROUND.....................................................................................…......…....2

     A .   The Indictment Alleges that Mr. Thomas
          Conspired with Co-Defendant, Noel, and Created False Records............2

     B .   Mr. Thomas' Rule 16 and *Brady-Giglio* Requests for Production of
          Documents Have Been Denied.................…….....…....................2-3

     C .   The Inspector General's Report and Any Other Reports,
          Documents, and/or Memoranda Made by Other Federal Agencies
          Investigating the Incident Surrounding the Death of Jeffrey Epstein
          Are Discoverable and Must Be Produced.................…..…..….........3-4

     D .   The Information Sought by This Motion.....................…....….....4-7

ARGUMENT................................................................................…..…..…...…...8

     A .   The Complete Inspector General's Report, as Well as
          the Other Reports Requested Are Necessary for
          Michael Thomas to Prepare His Defense....................…......…..8-11

     B.   Rule 16 and *Brady-Giglio* Include the Production of Documents
          And Reports Generated by Other Agencies............…..…..…....11-14

     C.   The Reports and Documents Requested Are
          Discoverable Under *Brady*.................................................…...14-16

CONCLUSION...............................................................................................16

SIGNATURE AND SUBMISSION.......................................................…..….......16

# TABLE OF AUTHORITIES

## CASES

*Brady v. Maryland,* 373 U.S. 83 (1963) ……………………………………………….…………14

*Giglio* v. *United States*, 405 U.S. 150, 154-55 (1972) ……………………..……………………15

*In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 892 (D.C. Cir. 1999)…..…15

*United States v. Armstrong*, 517 U.S. 456, 462 (1996) ………………………………..……8

*United States* v. *Ashley*, 905 F. Supp. 1146, 1168 (E.D.N.Y.1995) ……………………..……10

*United States* v. *Bagley*, 473 U.S. 667, 674-75 (1985) …………………………………..……14

*United States v. Bryan,* 868 F.2d 1032 (9th Cir.1989), …………………………………........…11-12
*cert. denied,* 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989)

*United States v. Edwards*, 191 F. Supp. 2d. 88, 90 (D.D.C. 2002) ………………………...……16

*United States* v. *George*, 786 F. Supp. 11, 13 (D.D.C. 1991) ……………………………………9

*U.S. v. Giffen*, 379 F. Supp. 2d 337 (S.D. N.Y. 2004) …………………………………..……8, 11

*United States v. Libby,* 432 F. Supp. 81 (D.D.C. 2006) …………………………………..…12-13

*United States* v. *Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) …………………………...……9, 13

*United States* v. *Maniktala*, 934 F.2d 25, 28 (2d Cir.1991) ………………………………...……10

*United States* v. *Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) ……………………………...…9, 12-13

*United States* v. *McGuinness*, 764 F. Supp. 888, 895 (S.D.N.Y.1991) …………………………8, 10

*United States* v. *Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988) ………………………………...……15

*United States* v. *Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989) ………………………...……8

*United States* v. *Safavian*, 233 F.R.D. 12 (D.D.C. 2005)…………………………….........………14-15

*United States* v. *Stein*, 488 F. Supp. 2d 350, 356 (S.D.N.Y.2007) …………………………………9

*United States* v. *Sudikoff*, 36 F. Supp. 2d 1196, 1198-99 (C.D.Cal. 1999) ………………..………15

*United States* v. *Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977) …………………………………11

*United States of America v. Volpe,* 42 F. Supp. 2d 204 (E.D.N.Y. 1999) ………...……………12

**RULES**

Fed. R. Crim. P. 16…………………………………….…………………....…….1-2, 4, 7-8, 11-15

Rule 16(a)(1)(C) ……………….……………………………………….……………11, 13

Fed. R. Crim. P. 16(a)(1)E………………………………………………..……………8

Fed. R. Crim. P. 16(a)(1)(E)(i) …………………………………….………………8, 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 19 Cr. 830-2(AT) |
| | ) | |
| -against- | ) | |
| | ) | <u>Oral Argument Requested</u> |
| TOVA NOEL and MICHAEL THOMAS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## <u>MOTION OF MICHAEL THOMAS TO COMPEL DISCOVERY</u>

### INTRODUCTION

Defendant, Michael Thomas, through his counsel, hereby moves for an order compelling the government to produce information in its possession or accessible to it from other agencies allied with the prosecution, concerning investigations and other materials relating to the facts alleged in the indictment, including but not limited to such documents that relate to the investigation into the death of Jeffrey Epstein, that is (a) material to the preparation under Fed. R. Crim. P. 16, and/or (b) exculpatory, inculpatory, or impeachment information discoverable under the *Brady-Giglio* doctrine.

The information requested in this motion has been previously requested by the defense in a letter dated January 29, 2020 from the Office of the United States Attorney, Southern District of New York. (See Exhibit A.) Through counsel from said office, the request has been denied, with government prosecutors referring defense counsel to their in-court statements made on November 25, 2019. (See Exhibit B.)

1

BACKGROUND

A.   The Indictment Alleges that Mr. Thomas Conspired with Co-Defendant,
     Noel, and Created False Records

The government's investigation in this case began upon the discovery of the alleged suicide of Jeffrey Epstein, on August 10, 2019, at the Metropolitan Correctional Center ("MCC").

At that time, Mr. Thomas, and Co-Defendant, Noel, were on duty as correctional officers in the section of the MCC, known as the Special Housing Unit ("SHU").

The indictment (Indictment, Introduction at ¶ 1), alleges, among other things, that certain prison counts, in other words, physically counting the prisoners in the cells, were not made by the defendants. In addition, the indictment alleges that the defendants, then, agreed and conspired to conceal the failure to conduct the prison counts, by creating and signing false records, attesting that such counts had occurred. (*Id.*)

Thus, the indictment charges the defendants with conspiracy. (Indictment, Count One at ¶ 28.) In addition, the indictment charges the defendants with creating false records. (Indictment, Count Four at ¶ 15.) Defendant, Thomas, is not charged in Counts Two and Three of the indictment.

B.   Mr. Thomas' Rule 16 and *Brady-Giglio* Requests for Production
     of Documents Have Been Denied

On December 16, 2019, the parties agreed to a protective order as to discovery, and on that day this Court entered same (Docket # 13). On January 29, 2020, defendant, Thomas, made certain requests to the government under Rule 16 of the Federal Rules of Criminal Procedure. (See Exhibit A.) Approximately, forty-five days later, on March 14, 2020, the government responded to the requests made by defendant, Thomas with a one sentence denial of said request. The substance of the response was that the defendant should refer to the government's responses made at the pretrial conference of November 25, 2019. (11/25/2019 - Docket Minute Entry).

2

This refusal is perplexing and nonsensical because these same government prosecutors presented the defendant with a consent to search document from the office of the Inspector General. (See Exhibit C.)

This motion concerns the defense requests for production of documents regarding important and essential issues in this case. Moreover, the public sphere is replete with information that the Inspector General of the United States opened an investigation into the circumstances surrounding the death of Jeffrey Epstein. (See article attached as Exhibit D.) Additionally, it is undisputed that the Inspector General also conducted an extensive investigation into inner workings of the Bureau of Prisons ("BOP"). The United States Attorney General, William Barr and the Acting Bureau of Prisons commissioner, Kathleen Hawk Sawyer both made numerous public statements that the Inspector General was undertaking an in-depth investigation into the Bureau of Prisons' policies, procedures, staffing and criminal conduct as a direct result of the death of Jeffrey Epstein at MCC on August 10, 2019. (See Exhibit D.) This report is important because the defendant believes that this report will contain information that is material and relevant to his defense. Moreover, it is the defendant's assertion that staffing issues, staffing shortages, supervisory lapses and the enforcement/interpretation of BOP procedures go to the heart of his defense to the government's criminal allegations.

The government's response to Mr. Thomas' discovery request was not detailed and simply made a blanket denial without giving Mr. Thomas the respect to state any legal justification for the denial. Defendant, Thomas, therefore, brings this Motion to Compel, as to the items originally requested by his counsel.

C.      The Inspector General's Report and Any Other Reports, Documents, and/or Memoranda Made by Other Federal Agencies Investigating the Incident Surrounding the Death of Jeffrey Epstein Are Discoverable and Must Be Produced

As stated previously, there is no dispute that multiple investigations by numerous federal agencies were opened to investigate the events surrounding the death of Jeffrey Epstein on August 10, 2019. Michael Thomas is charged with certain crimes resulting from this same event. On August 10, 2019, the Washington Examiner, reported under the headline: "Barr announces DOJ inspector general investigation into Epstein death." (See Exhibit D.) On December 28, 2019, Reuters reported under the headline: "FBI investigating Jeffrey Epstein's inner circle."[1] On September 11, 2019, CNN reported under the headline: "The Jeffrey Epstein investigation was more expansive than previously thought, documents show."[2] This news clip refers to what appears to be a separate investigation by the U.S. Marshals Service. On the Wikipedia page entitled, "Death of Jeffrey Epstein," the following appears, among other information: "After initially expressing suspicion, Attorney General William Barr described Epstein's death as 'a perfect storm of screw-ups.' Both the FBI and U.S. Department of Justice's Inspector General are conducting investigations into the circumstances of his death.[3]"

D.    The Information Sought by This Motion.

In the minute entry on the docket, of November 25, 2019, this Court noted, among other things, "The Government shall produce discovery to the defense by December 31, 2019." This discovery was not produced. Because the government has failed to meet the disclosure mandates of Rule 16 and *Brady-Giglio*, this motion seeks to compel the government to produce the following: 1) Inspector General's report investigating the death of Jeffrey Epstein and the Bureau of Prisons' policies and procedures; 2) any reports, witness statements, memorandum, and documents from any separate investigation conducted by the BOP; and 3) any reports, witness statements and/or documents created by any other federal agencies that investigated the circumstances surrounding the death of Jeffrey Epstein that have not already been disclosed.

---

[1] *See.* YouTube clip: https://www.youtube.com/watch?v=SI_haGuVBC4
[2] *See*, https://www.cnn.com/2019/09/11/us/jeffrey-epstein-investigation-us-marshals-documents/index.html
[3] *See*, *https://en.wikipedia.org/wiki/Death_of_Jeffrey_Epstein*

1 .    The report of the Inspector General, as to both defendants, including, any and all supporting memorandums, written statements, photos, videos, and incident reports

The defendant is entitled to complete disclosure of the Inspector General's report. Moreover, Mr. Thomas has a right to any and all information obtained in this investigation. Not only is it possible that this report contains additional witness statements but this report also has information that has not been furnished by the government in any capacity previously. Moreover, while the government would like to limit its discovery obligation to reports, videos and documents related specifically to night and early morning hours of August 10, 2019, the defense submits that there is a much larger context that lead to those events and the charges against Michael Thomas. Indeed, the Attorney General of the United States and the "acting" commissioner of the BOP opened an investigation that was precipitated by the events of August 10, 2019 but said investigation was much more expansive and in-depth. In November 2019, the "acting" commissioner Kathleen Hawks Sawyer stated at a congressional hearing under oath that there were more than 3300 vacancies within the BOP and she was surprised that the BOP was able to function with such issues. She went on to state that: "The vast majority of staff are good, hardworking employees, "but they are tired because they are stretched." (See article attached as Exhibit E.) The broad depth of the Inspector General's report presumably was that there were a myriad of systematic issues affecting the BOP that allowed the events of August 10, 2019 and the death of Jeffrey Epstein to occur. Accordingly, the defendant is entitled to disclosure of any and all of this information, especially if it relates to his defense of the charges that have been initiated. It is the defendant's contention that this report may also contain *Brady-Giglio* material. Indeed, the prosecutors in this case may be denying the defendant his right to this material without any knowledge of its contents. If so, this is a dereliction of their duty and denies Mr. Thomas important rights that are the foundation of our judicial system.

     2.     Any and all internal investigative reports created by the BOP as to both defendants, including, any and all supporting memorandums, written statements, photos, videos, and incident reports

To date, the government has disclosed a multitude of discovery documents but those documents only relate to witness statements, video and incident reports concerning the events of August 10, 2019. Michael Thomas would like this court to authorize the disclosure of any and all reports generated by investigators within the Bureau of Prisons regarding the August 10, 2019 incident, if those have not been disclosed. Additionally, the defendant seeks any all documents, reports, witness statements and disciplinary records of any and all MCC employees who have engaged in the same or similar conduct. Mr. Thomas requests the results of any disciplinary proceedings and documents maintained by the BOP regarding the discipline or administrative adjudication of any other employees who have failed to conduct rounds or inmate counts. More specifically, the defense is aware that there was an almost identical incident in 2005 or 2006 wherein officers failed to conduct institutional counts or rounds and an inmate committed suicide. The defense believes that only one of four officers in that case was given only a minor (14) day suspension. Moreover, although the government will argue that this incident is far removed from the current incident, the defendant disagrees. Mr. Thomas knew some of the individuals in that incident and he was well aware that their conduct did not lead to their indictment or incarceration. In fact, many of those officers did not receive as much as a reprimand for falsifying the same documents that Mr. Thomas is now charged with a federal crime for submitting. This goes to Mr. Thomas' defense in this case. The defendant's state of mind is always a material and relevant fact in any criminal case. Indeed, the *mens rea* for U.S. Code § 1001 is that the party knowingly and willfully made the false statement. Undoubtedly, given the assertions already made this information is of significant importance to Mr. Thomas' defense.

6

3.      As to both defendants, any and all reports, memorandums, written statements, photos, videos, and incident reports created, manufactured or possessed by any investigative or disciplinary agencies, participating in the investigation of the defendants, allied with the prosecution, and to which the prosecution has access

Defendant, Thomas, believes that the information contained in all of the requested documents may contain information that tends to exculpate him. He believes, in addition, that there may be other witnesses, or witness statements that are relevant, and which are not in the possession of the FBI investigators, who submitted reports in this case. Such reports will contain detailed information and statistics that show the conduct in which the defendant is being charged with a crime were: 1) rampant throughout the BOP; 2) made with knowledge and acquiescence by the leadership of the BOP; 3) made as a result of BOP policies that forced the defendant to engage in conduct for which he is now being charged criminally, and; 4) made in a manner which contains a possible discriminatory application of BOP policies by government prosecutors.

The information requested by this motion is not the only information that Mr. Thomas seeks under Rule 16 and *Brady-Giglio*. Further discovery motions will be necessary, once counsel has had the opportunity to review any response made by the government, in compliance with any order entered by this Court on this motion. The present motion is filed at this time because the government has refused the defendant's request to engage in a fair and impartial disclosure of relevant discovery. Early resolution of this dispute will enable defense counsel to determine the necessity and scope of pretrial subpoenas *duces tecum*.

ARGUMENT

A.      The Complete Inspector General's Report, as Well as the Other Reports
        Requested Are Necessary for Michael Thomas to Prepare His Defense

Mr. Thomas' requests for the aforementioned discovery is authorized and contemplated

by the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 16(a)(1)E, provides:

> "(E) *Documents and Objects*. Upon a defendant's request, the
> government must permit the defendant to inspect and to copy or
> photograph books, papers, documents, data, photographs, tangible
> objects, buildings or places, or copies or portions of any of these
> items, if the item is within the government's possession, custody,
> or control and:
>> (i) the item is material to preparing the defense;
>> (ii) the government intends to use the item in its case-in-
>> chief at trial; or
>> (iii) the item was obtained from or belongs to the
>> defendant."

Rule 16(a)(1)(E)(i) entitles a defendant to documents or other items that are material to preparing

arguments in response to the prosecution's case-in-chief. *See United States v. Armstrong*, 517

U.S. 456, 462 (1996). The key term for present purposes is "material." A document is material if:

> [I]t could be used to counter the government's case or to bolster a
> defense; information not meeting either of those criteria is not to
> be deemed material within the meaning of the Rule merely because
> the government may be able to use it to rebut a defense position....
> Nor is it to be deemed material merely because it would have
> dissuaded the defendant from proffering easily impeached
> testimony. U.S. v. Rigas, 258 F.Supp.2d 299 (S.D. N.Y. 2003)

The federal courts have consistently taken an expansive view of what the term "material" means

when it comes to ruling in favor of disclosure under Rule 16. Evidence is material if its pretrial

disclosure will enable a defendant to alter significantly the quantum of proof in his favor. *See*

*United States v. McGuinness*, 764 F. Supp. 888, 895 (S.D.N.Y.1991) and *U.S. v. Giffen*, 379 F.

Supp. 2d 337 (S.D. N.Y. 2004) Numerous federal districts have repeatedly ruled that "evidence

is material under Rule 16 as long as there is a strong indication that it will play an important role

in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States* v. *Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States* v. *Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)) (internal quotation marks omitted). Courts have interpreted the scope of Rule 16 (a)(1)(E)(i) broadly to ensure that defendants such as Mr. Thomas have a fair opportunity to prepare for trial. *United States* v. *Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989) ("The language and the spirit of the Rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case.") Accordingly, the "materiality standard normally is not a heavy burden." *United States v. Stein*, 488 F. Supp. 2d 350, 356 (S.D.N.Y.2007) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C.Cir.1993)). *Lloyd*, 992 F.2d at 351 (internal citation and quotation marks omitted); *United States* v. *George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (the materiality hurdle "is not a high one"). The requested documents in this motion are essential to Mr. Thomas' ability to prepare a defense. Mr. Thomas contends that the conduct with which he is being charged is: 1) rampant throughout the BOP; 2) made with knowledge and acquiescence by the leadership of the BOP; and 3) is the direct result of BOP policies and mismanagement that forced the defendant to engage in conduct for which he is now being charged criminally. Moreover, the information sought in this motion is crucial to the preparation of Mr. Thomas' defense. For instance, Mr. Thomas will assert that the rampant staffing shortages present at the MCC in August of 2019 led to the conduct for which Mr. Thomas is now criminally charged. If the Court accepts this representation, then the Court should find that the discovery requests contained in this motion are "material" and must be disclosed. As support for this position the defendant has attached an excerpt from a union committee meeting that was held merely 3 days before Jeffrey Epstein died at MCC on August 10, 2019. The attached memorandum memorializes a meeting attended by Jermaine Darden, the captain of the MCC, wherein he was

informed that there were severe staffing shortages in the SHU where the alleged crime took place and that these staffing shortages created a significant safety risk. (See excerpt attached as Exhibit F.)

Additionally, Michael Thomas is charged with making false statements for signing certain count slips and round sheets. However, what the government has deliberately failed to clarify is that those documents have to be approved by supervisors and are signed and/or initialed by other BOP employees. If this is the case, why is Michael Thomas and Tova Noel the only two employees charged with making false statements. Indeed, according to the government, they have video showing Mr. Thomas sleeping and surfing the internet instead of doing the rounds as required. Importantly, on the night in question, there is at least one BOP employee tasked with watching the surveillance cameras. Presumably, this person would have watched Mr. Thomas sit in his chair and sleep and then observe him present a document stating that he conducted rounds. It is defendants' burden to make a prima facie showing that documents sought under Rule 16(a)(1)(E)(i) are material to preparing the defense. *McGuinness*, 764 F. Supp. at 894. "To establish a showing of materiality, a defendant must offer more than the conclusory allegation that the requested evidence is material." *See United States v. Ashley*, 905 F. Supp. 1146, 1168 (E.D.N.Y.1995) The defendant submits that he has carried this burden. Plainly, the documents upon which the government procured an indictment based on making a false statement have to be reviewed, verified and signed by other BOP employees and/or supervisory personnel. However, inexplicably none of those individuals are charged with violating the law. This issue standing alone establishes the import of how the requested disclosures will assist "the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir.1991) The requested reports go to the heart of Mr. Thomas' defense. He needs to know if these issues are addressed in the Inspector General's report or in any other reports by

government agencies because it is highly relevant to Mr. Thomas' defense in this case. Furthermore, the government had Mr. Thomas sign a consent form specifically from the Inspector General's office. (See Exhibit C.) Thereafter, the government turned over the results of this search in the normal course of discovery production. This fact shows that the Inspector General was investigating this incident thus all information they receive is discoverable. This Court should order the production of the documents within forty-five (45) days from the entry of an order on this motion.

      B.     Rule 16 and *Brady-Giglio* Include the Production of Documents and Reports Generated by Other Agencies

The facts, shown above as reported in the media and secondary sources, clearly show that other agencies were involved in the investigation of Jeffrey Epstein's death and the defendant's arrest and indictment. Thus, clearly, this Court should not permit the government to self-limit discovery. A prosecutor is not "allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial." *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977); *U.S. v. Giffen*, 379 F. Supp. 2d 337 (S.D. N.Y. 2004)

In *United States v. Bryan*, 868 F.2d 1032 (9th Cir.1989), *cert. denied*, 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989), after a nationwide investigation by the IRS, Bryan had been convicted of, among other things, conspiracy to defraud the United States. Bryan sought discovery, under Rule 16(a)(1)(C) of items that were in the possession of the FBI. The charges against Bryan stemmed from the IRS investigation, and this difference, together with the further objection that production should be limited only to documents found in the District in which the matter was pending, Oregon, formed the basis of the government's objection.

Bryan argued, conversely, that the 'government' under the Rule, included not only the prosecutors, but also any closely connected investigative agencies. The Court dispensed with the 'out of District' argument by the government, ruling that Rule 16 was not so limiting.

With respect to the issue of production of items from other closely connected agencies, the Court found in favor of Bryan as far as discovery of items by such agencies. In setting forth the rule, the Court said: "The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody and control of any federal agency participating in the same investigation of the defendant." *Id.* at 1036.

The District Courts of New York have followed *Bryan, supra.* In *United States of America v. Volpe,* 42 F. Supp. 2d 204 (E.D.N.Y. 1999), also a corrections/police officer case, the Court found that the materials were discoverable from any other agencies "allied with the prosecution." *Id.* at 221. In addition, in citing to *Bryan, supra,* the Court stated that: "Another factor in the analysis is whether or not the prosecution has access to the materials." *Id.*

In this matter, defendant, Thomas, has shown that other agencies 'allied with the prosecution,' have and/or are, participating with each other. The statement of Attorney General, William Barr, confirms that a separate investigation was initiated by the Inspector General. Additionally, it seems more than obvious that the internal affairs division within the BOP conducted a separate investigation into the events in questions. Importantly, Rule 16 focuses on the *preparation* of the defense. Therefore, documents are material under Rule 16 and subject to disclosure if they help the defense to ascertain the strengths and weaknesses of the government's case. *Marshall,* 132 F.3d at 67-68.

Other Districts have also followed *Bryan.* In *United States v. Libby,* 432 F. Supp. 81 (D.D.C. 2006), the Court was faced with a motion to compel, by defendant, I. 'Scooter' Libby, in the Valerie Plame CIA leak case. The matter concerning Libby concerned whether he lied as to the disclosures as to Plame. Libby sought documents which, as the Court pointed out, were of a

far-reaching nature, including documents related to a revenge issue as to Valerie Plame, and her late husband, Ambassador Wilson. The Court in *Libby* ruled in favor for the defense and granted the motion to compel discovery in several key areas of the case.

This Court will find *Libby, supra,* important because the Court's decision in that case focused on "all agencies" that have information regarding the offenses charged. In the instant matter, therefore, it will not be enough for the government to state that other agencies may not be allied with the prosecution, or that the government lacks access to the documents. If the documents provide exculpatory evidence, and are related to the issues in the indictment, they must be produced.

In *Marshall*, 132 F.3d at 63, the defendant was charged in a drug related transaction. There were records on visitation from the local jail where the defendant was incarcerated, pager records, the pager, and local records from the county public records about a traffic stop. These items were uncovered by the government agents investigating the matter, but only after discovery had been concluded. During the course of the trial, the Court took a four-day adjournment, in order to address the newly discovered evidence. The trial judge decided to exclude all of the newly discovered evidence, and, as a result, Marshall was found guilty. On appeal, the government argued that, in fact, the newly discovered evidence, under Rule 16, tended to incriminate, not exculpate Marshall. On appeal, the Court disagreed, citing Rule 16(a)(1)(C) as requiring the production of items that are material to the preparation of the defendant's case. The Court, in addition, rejected the government's argument, that the items must be 'materially exculpatory,' *Id.* at 68. In announcing the rule, that Court stated: "In *United States v. Lloyd*, we said that evidence is material under Rule 16 'as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *See Lloyd* at 351.

13

Undoubtedly, the government is going to assert that the requested documents in this motion are not relevant or material and do not bear on the charges as they relate to the conduct that did or did not take place on August 10, 2019. The documents sought are material if they will help the defense with trial preparation tasks such as evaluating the strength of the government's case, investigating possible defenses, finding additional relevant evidence, and developing strategies to impeach government witnesses. *See United States v. Safavian,* 233 F.R.D. 12 (D.D.C. 2005) It is not up to the government to define Mr. Thomas' defenses to the indictment or to determine what is useful in preparing them.

For these reasons, this Court should include the requirement of the production of both inculpatory and exculpatory evidence in any order granting this motion to compel.

At this juncture, however, the government has made, at best, a token objection to the discovery by citing to a terse denial made at a previous court appearance.

Mr. Thomas, therefore, cannot guess what may be other objections, but this Court should overrule any such attestations as going against fundamental fairness.

C.     The Reports and Documents Requested Are Discoverable Under *Brady*

This motion has articulated several rationales upon which the defendant in this matter is entitled to much more information than the government is voluntarily willing to disclose. The government's disclosure obligations do not end with Rule 16. Much of the discovery sought by this motion is firmly rooted within the scriptures of documents that must be disclosed under the doctrine set forth in *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny.

Under *Brady*, the government has an affirmative duty to produce any evidence favorable to the defendant that is material to either guilt or punishment. *See United States* v. *Bagley*, 473 U.S. 667, 674-75 (1985) (the prosecution is required "to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial"). Both exculpatory information and evidence that can be used to impeach the prosecution's witnesses are considered

14

"favorable" under *Brady* and must be disclosed by the government. *Id.* at 676-77; *see also Giglio* v. *United States*, 405 U.S. 150, 154-55 (1972); *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 892 (D.C. Cir. 1999). Moreover, the defense is already in possession of witness statements that one or both of the defendants in this indictment may have conducted rounds or inmate counts on August 10, 2019. Accordingly, there is a logical assumption that there might be additional exculpatory statements contained in the Inspector General's report or certain internal reports maintained by the BOP internal affairs division or other government agencies that were conducting a contemporaneous investigation with FBI.

The prosecution must produce to the defense not only all favorable evidence that is admissible, but also all evidence "that is likely to lead to favorable evidence that would be admissible." *Safavian*, 233 at 17 (quoting *United States* v. *Sudikoff*, 36 F. Supp. 2d 1196, 1198-99 (C.D.Cal. 1999)). Just as with Rule 16 disclosure, the government must interpret its *Brady* obligations broadly. "Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Id.* (citing *United States* v. *Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988). Without question, the *Brady* disclosure obligation is broader than Rule 16 because it requires production not just of documents, but also of information known to the government that has been documented in some fashion.

In *Safavian*, the court explained the materiality standard under *Brady* that applies to pretrial discovery:

> [T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed-- with the benefit of hindsight--as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed.

*Id.* at 16 (citing cases); *see also United States v. Edwards*, 191 F. Supp. 2d. 88, 90 (D.D.C. 2002).

The defendant avers that much of the requested reports fall well into the conscripts of *Brady* and thus should be disclosed in pretrial discovery.


CONCLUSION

The Motion to Compel of defendant, Thomas, should be granted, and this Court should order the production of documents within forty-five (45) days from the date of the Order.

RESPECTFULLY SUBMITTED,

/ s /

_____

Montell Figgins, Esquire
Attorney for Defendant, Michael Thomas
The Law Offices of Montell Figgins, LLC
17 Academy Street
Suite 305
Newark, NJ 07102
973-242-4700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the 1st day of April, 2020, I uploaded the original of this Motion to Compel onto ECF, and provided courtesy email copies by email to:

Nicolas Tyler Landsman Roos
Assistant U.S. Attorney
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-2421
Email: nicolas.roos@usdoj.gov

Rebekah Allen Donaleski
Assistant U.S. Attorney
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2423
Fax: 212-637-2443
Email: Rebekah.Donaleski@usdoj.gov


Jessica Rose Lonergan
Assistant U.S. Attorney
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212)-637-1038
Fax: (212)-637-2937
Email: jessica.lonergan@usdoj.gov

/ s /
_____
Montell Figgins

1

# EXHIBIT A

## The Law Offices of
# MONTELL FIGGINS, LLC

17 Academy Street, Suite 305
Newark, New Jersey 07102
Phone: (973) 242-4700
Fax: (973) 242-4701
www.figginslaw.com

BRANCH OFFICES:

| | | |
|---|---|---|
| 140 East Ridgewood Avenue<br>Paramus, NJ 07640 | | 30 Wall Street 8th Floor<br>New York, NY 1005 |

**Reply to Newark Office [X]**

ASSOCIATES
Kenneth E. Brown, Esq.
Linda Childs, Esq.

January 29, 2020

**SENT VIA EMAIL**
Rebekah Donaleski
Assistant United States Attorneys
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

> Re:  **State of NY v Michael Thomas, et al.**
> **Docket No.: 1:19-cr-00830**
> **Discovery Request**

Dear Ms. Donaleski:

As previously discussed, I am making a formal request pursuant to Rule 16(a)(1)(C) for any and all reports, memorandums, written statements, photos, videos, and incident reports created, manufactured or possessed by the United States Inspector General.

Please see *U.S. v. Bryan*, 868 F.2d 1032 (1989) if you maintain that Mr. Thomas is not entitled to the requested documents.

Respectfully yours,

/s/ Montell Figgins
Montell Figgins, Esq.
*Attorney for Defendant Michael Thomas*

cc:     Jason Erroy Foy, Esq, *Counsel for Defendant Noel via ECF*

# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 14, 2020

<u>**BY EMAIL**</u>

Jason E. Foy
Foy & Seplowitz LLC
105 Main Street
Hackensack, NJ 07601

Montell Figgins, Esq.
Law Offices of Montell Figgins
17 Academy Street, Suite 305
Newark, NJ 07102

> **Re:**   *United States v. Tova Noel and Michael Thomas*, No. 19 Cr. 830

Dear Counsel:

We write in response to your discovery request letters, dated January 29, 2020. This letter and the content herein is designated as "Protected Materials" pursuant to the Protective Order entered in this matter.

<u>Thomas Request.</u> The Government refers to its prior response to this request, as stated at the November 25, 2019 pretrial conference.

<u>Noel Requests No. 1-10, 12-13.</u> We note, at the outset, that many of these requests are extremely broad and pertain to information that does not appear to be relevant to the case. To the extent material called for by these requests is within the Government's possession and subject to disclosure at this time, the Government has already disclosed such information to you, including by letter dated January 24, 2020. To the extent these requests call for information that is not currently in the Government's possession or which is not subject to disclosure, you identify no legal basis or authority for these requests, and we are not aware of any authority requiring us to obtain and/or disclose this information.

<u>Noel Request No. 11.</u> The name of the MCC technician referenced in the Government's previous letter is Hughwon Daniel.

<u>Noel Request No. 16.</u> The Government has already produced the available video surveillance in its possession for July 23, 2019 for the Special Housing Unit. The Government attaches hereto two public filings in *United States v. Tartaglione*, 16 Cr. 832 (KMK), which reference these issues.

06.20.2018

Page 3

refers you to the following files during the following times, which show the defendants at the desk during the periods of time in which they were using computers, as shown by the forensic examination referenced above: files CH0080_20190809225956, CH0080_20190809235959 CH0080_20190810005959, CH0080_20190810025959, CH0080_20190810035959, CH0080_20190810045959, and CH0080_20190810055959, during approximately (8/9) 23:39:00 – (8/10) 00:15:00, (8/10) 03:54:00 – 03:57:00, (8/10) 04:29:00 – 05:04:00, and (8/10) 05:10:00 – 06:20:00 as to defendant Noel, and approximately (8/10) 00:35:00 – 01:15:00 and (8/10) 06:00:00 – 06:20:00 as to defendant Thomas.

Noel Request No. 23. The Government refers you to files CH0080_20190810005959, CH0080_20190810015959, and CH0080_20190810025959 during approximately 00:01:00 – 03:15:00 on August 10, 2019.

We are available at your convenience to discuss any further.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____/s/_____
Rebekah Donaleski
Nicolas Roos
Jessica Lonergan
Assistant United States Attorneys
(212) 637-2423/2421/2418/1038

06.20.2018

# EXHIBIT C



# United States Department of Justice
## Office of the Inspector General

### Consent to Search Computer/Electronic Equipment

I, *Michael Thomas* have been asked to give my consent to the search of my computer/electronic equipment. I have also been informed of my right to refuse to consent to such a search. I have been informed that I have a right not to have my computer/electronic equipment searched without a search warrant.

I, hereby authorize ___FBI___ and any other person(s) designated by the Department of Justice Office of the Inspector General to conduct at any time a complete search of:

☐ All computer/electronic equipment located at _____

These persons are authorized by me to take from the above location: any computer hardware and storage media, including internal hard disk drive(s), floppy diskettes, compact disks, scanners, printers, other computer/electronic hardware or software and related manuals; any other electronic storage devices, including but not limited to, personal digital assistants, cellular telephones, and electronic pagers; and any other media or materials necessary to assist in accessing the stored electronic data.

☑ The following electronic devices:

Description of computer, data storage device, cellular telephone, or other device (make, model, and serial number, if available)

> Apple iPhone XS

I certify that I own, possess, control, and/or have a right of access to use these devices and all information found in them. I understand that any contraband or evidence on these devices may be used against me in a criminal, civil, or administrative proceeding.

I relinquish any constitutional right to privacy in these electronic devices and any information stored on them. I authorize the Department of Justice Office of the Inspector General to make and keep a copy of any information stored on these devices.

I understand that any copy made by the Department of Justice Office of the Inspector General will become the property of the Department of Justice Office of the Inspector General and that I will have no privacy or possessory interest in the copy.

This written permission is given by me voluntarily. I have not been threatened, placed under duress, or promised anything in exchange for my consent. I have read this form; it has been read by me; and I understand it. I understand the ___English___ language and have been able to communicate with agents/officers.

I understand that I may withdraw my consent at any time. I may also ask for a receipt for all things turned over.

Signed: _____     Signature of Witnesses: _____

Date and Time: _8/20/19. 10.20AM_     _8/26/19 10:20 am_

OIG FORM 233/4 (03/23/2012)

# EXHIBIT D

# Barr announces DOJ inspector general investigation into Epstein death

by Jerry Dunleavy | August 10, 2019 01:16 PM

Attorney General William Barr announced following Jeffrey Epstein's apparent suicide Saturday morning that Justice Department Inspector General Michael Horowitz launched an investigation into the circumstances of the accused child sex trafficker's death in his prison cell.

This move is in addition to the FBI inquiry already underway. The FBI declined to comment about its investigation.

"I was appalled to learn that Jeffrey Epstein was found dead early this morning from an apparent suicide while in federal custody," Barr said. "Mr. Epstein's death raises serious questions that must be answered."

Neither the Justice Department not the inspector general's office immediately responded to the *Washington Examiner*'s request for further details.

The Bureau of Prisons released a statement on Saturday stating that the jet-setting financier and sex offender was found "unresponsive in his cell" located in the Special Housing Unit at around 6:30 a.m. this morning following "an apparent suicide." Officials said lifesaving efforts were immediately undertaken and that emergency medical services were quickly called. Epstein was brought to a local hospital where he was pronounced dead.

Epstein reportedly hanged himself, and a gurney carrying Epstein's body was wheeled out of the Manhattan Correctional Center around 7:30 a.m. this morning, according to reports.

According to a representative for NYC Office of Chief Medical Examiner who spoke with the *Washington Examiner*, "there is no official cause of death yet" as "the medical examiner has to do their job."

"We are investigating the cause of death and we have an open case," the representative said.

The 14-page indictment against Epstein alleged that he sexually exploited dozens of minor girls at his homes in Manhattan, New York, and Palm Beach, among other locations, between 2002 and 2005 and perhaps beyond. Some of the victims were ostensibly as young as 14 at the time the alleged crimes occurred. Epstein allegedly "created a vast network of underage victims for him to sexually exploit"and "maintained a steady supply of new victims."

Epstein was reportedly found nearly unconscious on his cell floor with marks on his neck back in July, but it had never been officially confirmed by authorities whether he had attempted to take his own life, whether he'd been assaulted by another inmate, or whether it was a ploy to change prisons.

Epstein was subsequently placed on suicide watch, but there are numerous reports that when he was found dead Saturday he "was in his cell but was not on suicide watch at the time of his death."

The Manhattan Correctional Center did not immediately respond to questions from the *Washington Examiner* about the circumstances of Epstein's suicide and how it was allowed to happen.

Horowitz has handled high-profile investigations before. Last summer, the watchdog released a 568-page report on Midyear Exam, the DOJ and FBI investigation into former Secretary of State Hillary Clinton's improper private email server. And the inspector general is expected to release the results of his investigation into allegations of abuse of the Foreign Intelligence Surveillance Act during the Trump-Russia probe sometime around Labor Day.

Epstein's apparent suicide followed the unsealing on Friday of 2,000 pages of court records by the U.S. Court of Appeals for the 2nd Circuit connected to the defamation lawsuit brought by Epstein accuser Virginia Giuffre against British socialite Ghislaine Maxwell, Epstein's on-again-off-again girlfriend and longtime associate whom Giuffre has accused of helping Epstein abuse her and other women when Giuffre was underage. The records included allegations by Giuffre that Maxwell instructed her to have sex with the U.K.'s Prince Andrew, New Mexico Gov. Bill Richardson, and former Sen. George Mitchell as well as money manager Glenn Dubin and MIT professor Marvin Minksy, among other high-profile figures.

Before Friday, Epstein's flight records spanning from 1999 through 2005 had been made public, but new flight manifests ranging from November 1995 through August 2013 were released Friday. The records show Epstein crisscrossed the globe accompanied by tycoons, celebrities, employees, friends, and politicos.

Alex Acosta, the former U.S. attorney for Southern Florida, reached an agreement in 2008 with Epstein's attorneys in which Epstein was allowed to plead guilty to two state-level prostitution solicitation charges. Epstein served just 13 months of an 18-month stint at a Palm Beach County jail where he was allowed out on work release, paid restitution to certain victims, and registered as a sex offender. The agreement was reportedly struck before investigators had finished interviewing all the alleged victims and was kept secret from some of Epstein's victims. Acosta left his Cabinet position amid increased scrutiny of the sweetheart deal.

Florida Governor Ron DeSantis announced earlier this week that the Florida Department of Law Enforcement was launching an investigation into the Palm Beach County Sheriff's Office to look at every aspect of Epstein's case in Florida. The Justice Department said in February that it had also launched an internal inquiry into the handling of the Epstein case at the federal level, but the status of that investigation is not known.

Epstein was arrested at the airport in Teterboro, New Jersey after returning from an overseas trip to Paris in early July. Epstein's home in New York City was raided by law enforcement as well, and investigators found nude photographs of underage girls, thousands of dollars in cash, dozens of loose diamonds, and a foreign passport from the 1980s with Epstein's picture and a false name.

Epstein's lawyers had argued that Epstein should be allowed out on house arrest, asking the court to let him await trial in his Manhattan mansion. That request was denied. Besides his New York City mansion, Epstein also had an estate in Palm Beach, maintained a ranch in New Mexico, had a luxury apartment in Paris, and owned a private island in the U.S. Virgin Islands.

In denying him bail earlier this month, the judge said that Epstein posed a "significant" danger to the community and agreed with prosecutors that he was a serious flight risk.

# EXHIBIT E



# Lack of Staff and Resources Continue to Strain the Federal Bureau of Prisons

By Courtney Bublé
November 19, 2019

The Federal Bureau of Prisons is severely lacking in staff and resources, the director testified before a Senate panel on Tuesday.

Kathleen Hawk Sawyer, who was bureau director from 1992-2003, came out of retirement to lead the agency again after acting director Hugh Hurwitz was reassigned in the aftermath of financier and alleged sex trafficker Jeffrey Epstein's death in August while in federal custody. As the bureau, which oversees 122 federal prisons and more than 170,000 inmates nationwide, is working to implement the First Step Act's prison reforms and deal with the circumstances that led to Epstein's death, it is facing severe resource issues, according to Hawk Sawyer.

"We have put such huge strains on the Bureau of Prisons trying to accomplish its mission," Hawk Sawyer said before the Senate Judiciary Committee. "With the dramatic growth we've had, the budget cuts, staffing shortages, it's just been incredible to me that the bureau has been able to function during the last 16 years that I've been gone." The vast majority of staff are good, hardworking employees, "but they are tired because they are stretched," she added.

Hawk Sawyer attributed the resource problem to the rapid increase in the prison population in the last 30 years, employees retiring at a faster rate than they are hired, uncertain budgets, the recent government shutdown and the hiring freeze early in the Trump administration. "We have never had adequate resources to provide all the programs for all the inmates," Hawk Sawyer said. "I'm hoping that will change now since you all support the First Step Act."

According to the bureau's website it currently has 36,348 staff members. *The New York Times* reported:

Between December 2016 and September 2018 – the date of the most recent data available from the federal Office of Personnel Management – the number of correctional officers fell more than 11%, from 19,082 to 16,898. That decline reversed a longtime trend. Before President Donald Trump took office, the number of federal correctional officers had continuously increased: there were 12.5% more officers at the end of 2016 compared to the beginning of 2012.

Hawk Sawyer said the bureau has "made great progress" to fill the over 3,300 vacancies nationwide, but it is going to take a while. In order to hire more staff, the bureau is working with the Office of Personnel Management to get direct hiring authority, hiring retirees on a temporary basis because they are already trained and using the professional services company Accenture to recruit young people online.

Sawyer said the only thing that impedes the bureau from providing adequate care and services for inmates is resources. She expects the agency will receive $75 million in this year's appropriations for the First Step Act, which the law requires for the first five years, although she hoped for more. Last year the

money to fund the program had to come out of the agency's own budget since it didn't get any extra from Congress, according to Hawk Sawyer.

In the meantime, the bureau has been relying on augmentation to temporarily fill correctional officer positions with other staff. Although Sawyer said this is a good process and all staff are trained for this role, she admitted the agency has to use augmentation more than is optimal and often employees are taken away from their designated work.

In addition to hiring, Hawk Sawyer said the bureau is working to replace the surveillance cameras in all prisons, ensure that staff are thoroughly trained and have managers repeatedly tell staff what their responsibilities are. These are all issues that came to light in the wake of the Epstein scandal.

As the hearing was going on the Justice Department indicted the two federal correctional officers on duty the night of Epstein's death with falsifying records to say they checked on him.

Hawk Sawyer agreed with Sen. Ted Cruz, R-Texas, that the Epstein situation was a "black eye" on the entire agency. Since the FBI and the Justice Department Inspector General are looking into the Epstein case she said she could not speak about any specifics.

"We have some bad staff," Hawk Sawyer said. "We want rid of those bad staff who don't do their job. We want them gone one way or another either by prosecution or by termination. But the good staff are doing extraordinary work out there every day managing the 177,000 inmates. You never hear anything about those people."

By Courtney Bublé
November 19, 2019

https://www.govexec.com/oversight/2019/11/lack-staff-and-resources-continue-strain-federal-bureau-prisons/161398/

# EXHIBIT F



**U.S. DEPARTMENT OF JUSTICE**

**Federal Bureau of Prisons**

*Metropolitan Correctional Center*

*150 Park Row*
*New York, New York 10007*

August 7, 2019

████████████, LMR CHAIRPERSON – EXECUTIVE ASSISTANT

████████████, PRESIDENT, LOCAL 3148

SUBJECT: LMR Committee Meeting Minutes August 7, 2019

The LMR Meeting was held on Wednesday, August 7, 2019, at 9:30 a.m. This meeting is a continuance of previous LMR meetings and the discussions of the old and current agenda items from those meetings.

The following staff was present:

(Management)
████████████, LMR Chairperson, Executive Assistant
████████████, AW
Jermaine Darden, Captain
████████████, AHRM


(Union)
████████████, President
████████████, Vice President
████████████, Chief Shop Steward
████████████, Shop Steward
████████████, Shop Steward
████████████, In- Training

Old Business Items: August 7, 2019

Settled Arbitration Cases: (TABLED)
UNION: The Union states Management has not complied with the local agreement. Union sent various e-mails and no response. Equipment was ordered to compensate for those who did not receive boots in accordance with the contract. (See previous LMR meeting minutes) The Union





**Cross counting of housing units:** (TABLED)

UNION: Has requested the responses from the 6/28/18 LMR.
MANAGEMENT: Management will provide responses to the union's inquiries communicated on June 28, 2018 by the next LMR meeting scheduled for September 26, 2019.

**Lunch Reliefs: (TABLED)**

**Quarterly Roster: (CLOSED)**
**Non-Uniform staff attire:** (TABLED)

**New Agenda Items:**

**Correctional Services Annual Leave Schedule:** (TABLED)

MANAGEMENT: Management states they will like to reduce the annual leave schedule from 7 weeks to 5 weeks.

UNION: The union states they do not agree with the reduction of annual leave slots, it's a violation of the contract as its not fair and equitable. Correctional services staff are being penalized due to local management failing to hire. Management has asked to sit down with the captain to discuss an alternative and union is open to discuss by August 15, 2019.

**Augmentation:** (TABLED)

UNION: The union states various e-mails were sent regarding augmentation. Since March 2019 no one has responded to e-mails. Management has come with a procedure on augmentation. We know what the contact states and we have not negotiated. What is the procedure for non-bargaining staff at MCC New York and what order? Today the union is invoking its right to negotiate the procedures and the impact and implementation of the augmentation of the bargaining unit at MCC New York. The local wants to know when managements is available and ready to move forward on negotiations. Additionally, the local is inquiring as to whether management will comply on the contract and cease the procedures they have in place for augmentation of the bargaining unit. Union is requested the procedures used as of August 7, 2019 and a copy of the list for augmentation,

MANAGEMENT: Management exercise their rights within the master agreement to re-assign staff as needed. Management will not provide the augmentation list to the Union. Management will continue to negotiate ground rules with the local to use for local negotiations on all matters.

**Under Staffing in SHU:** (TABLED)

UNION: The union states we are violating the agency's policy by not having enough staff in SHU. It's a safety risk and raises the inherit risk when we are under staffed in SHU. We are




requesting that SHU operations are halted or curtailed when it is understaffed meaning all of the post are not filled in SHU. Operations to include showers and recreational. The minute the union is notified that a staff member is instructed by a management official to conduct operations in SHU in violation of agency policy, the union will be reporting that management official to Office of Internal Affairs.

MANAGEMENT: Management will assess duties and responsibilities as appropriate in SHU.

### Institutional Supplements: (TABLED)

MANAGEMENT: Management states they have been pending for several years and the union is pending review that are not policy driven which needs warden signature and dates.

UNION: The union states we needed official time for several union members to work on the supplements. Our requests for official time have gone unanswered. The union will provide a list of union members and number of hours needed for review of Institutional Supplements on September 26, 2019.

**\*\*The following agenda items below were not discussed in this meeting\*\***

**Communication with employees on extended leave:**

**New Managers and Local Agreements, Past Practice(s):**

**Staff Housing:**

**Staff Facilities**

**Honoring of Old LMR Agreements:**

**Overtime Hiring at MCC New York:**

**Lieutenant Medina:**

**Opening Old Agenda Items:**

**Responses to Union Inquiries:**

**T&A agreement:**

Next LMR meeting is scheduled for September 26, 2019 at 9:00 a.m.

UNION/Local 3148

MCC New York Management