UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                      :

UNITED STATES OF AMERICA          :
                                      :

            - v. -                  :                 19 Cr. 830 (AT)
                                      :

TOVA NOEL and MICHAEL THOMAS,   :
                                      :

           Defendants.        :
                                      :
------------------------------------------------------ x

 

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA**
**IN OPPOSITION TO DEFENDANT MICHAEL THOMAS'S MOTION TO COMPEL**

 

                                         GEOFFREY S. BERMAN
                                         United States Attorney
                                         Southern District of New York

Rebekah Donaleski
Jessica Lonergan
Nicolas Roos
Assistant United States Attorneys
- *Of Counsel* -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

I.     The Indictment ........................................................................................................ 2

II.    Pretrial Discovery and the Defendant's Request for Additional Materials ...................... 3

       A.    The Government's Discovery Production ............................................................ 3

       B.    Defense Requests for Additional Discovery Materials......................................... 4

ARGUMENT ..................................................................................................................... 7

I.     Applicable Law ....................................................................................................... 7

       A.    *Brady* & *Giglio* ........................................................................................... 7

       B.    Rule 16 ....................................................................................................... 8

II.    Thomas is Not Entitled to Additional Materials .......................................................... 8

       A.    The Government Has Satisfied its Discovery and Disclosure Obligations .............. 8

       B.    The Requested Records Are Not "Material" to Preparing a Defense and Are
             Sought for the Impermissible Purpose of Jury Nullification ................................ 10

             1. Applicable Law ...................................................................................... 10

             2. Discussion ............................................................................................. 12

       C.    The Government is Not Required to Collect Materials From Agencies Who
             Were Not Part of the Prosecution Team .......................................................... 15

             1. Applicable Law ...................................................................................... 16

             2. Discussion ............................................................................................. 19

       D.    Any Draft Inspector General Report is Not Subject to Disclosure......................... 21

       E.    Thomas Has Not Carried His Burden With Respect to Discovery of Material in
             Support of a Selective Prosecution Claim ........................................................ 24

             1. Applicable Law ...................................................................................... 24

             2. Discussion ............................................................................................. 26

CONCLUSION .................................................................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479 (S.D.N.Y. 2010) ............................................... 27

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................................. passim

*Color of Change v. United States Dep't of Homeland Sec.*, 325 F. Supp. 3d 447 (S.D.N.Y. 2018) ....................................................................................................................... 27

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) .................... 26, 27

*Giglio v. United States*, 405 U.S. 150 (1972) ...................................................................... passim

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) ...................................................................... 26

*In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008) ............... 15

*Kyles v. Whitley*, 514 U.S. 419 (1995) ....................................................................................... 19

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ............................................................. 26

*Nat'l Res. Def. Council v. United States Envtl. Prot. Agency*, 954 F.3d 150 (2d Cir. 2020) ......................................................................................................................................... 26

*Standefer v. United States*, 447 U.S. 10 (1980) ........................................................................ 13

*United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003) .................................................... 29, 30, 31

United States v. *Armstrong*, 517 U.S. 456, (1996) ................................................................ passim

*United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998) ......................................................... 19, 25

*United States v. Bagley*, 473 U.S. 667 (1985) ............................................................................. 7

*United States v. Barcelo*, 628 F. App'x 36 (2d Cir. 2015) ......................................................... 19

*United States v. Bass*, 536 U.S. 862 (2002) ......................................................................... 30, 33

*United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974) ........................................................ 30, 31

*United States v. Blaszczak*, 308 F. Supp. 3d 736 (S.D.N.Y. 2018) ............................................. 20

United States v. *Bryan*, 868 F.2d 1032 (9th Cir. 1989) ............................................................... 24

*United States v. Carr*, 424 F.3d 213 (2d Cir. 2005) .................................................................... 12

*United States v. Collins*, 409 F. Supp. 3d 228 (S.D.N.Y. 2019) .................................................. 20

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) ................................................ 7, 8

*United States v. Defreitas*, No. 07 Cr. 543 (DLI), 2011 WL 317964, at *10 (E.D.N.Y. Jan. 31, 2011) ..................................................................................................... 12, 17

*United States v. Delacruz*, No. 14 Cr. 815 (KBF), 2015 WL 2211943, at *4 (S.D.N.Y. May 12, 2015) ............................................................................................................ 16

*United States v. Edwards*, 101 F.3d 17 (2d Cir. 1996) ............................................... 13

*United States v. Fares*, 978 F.2d 52 (2d Cir. 1992) ........................................ 30, 31, 33

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) ....................................... 26

*United States v. Finnerty*, 411 F. Supp. 2d 428 (S.D.N.Y. 2006) ............................... 20

*United States v. Floyd*, No. 99 Cr. 0234 (DAB), 1999 WL 476438, at *2 (S.D.N.Y. July 7, 1999) ............................................................................................................... 16

*United States v. Frank*, 8 F. Supp. 2d 253 (S.D.N.Y. 1998) ...................................... 26

*United States v. George*, 786 F. Supp. 56 (D.D.C. 1992) ........................................... 15

*United States v. Ghailani*, 687 F. Supp. 2d 365 (S.D.N.Y. 2010) ............................... 21

*United States v. Gibbons*, 602 F.2d 1044 (2d Cir. 1979) ............................................ 16

*United States v. Gonzalez*, No. 19 Cr. 123-2 (NRB), 2020 WL 1809293, at *5 (S.D.N.Y. Apr. 9, 2020) ............................................................................................. 10

*United States v. LeRoy*, 687 F.2d 610 (2d Cir. 1982) ................................................... 7

*United States v. Levin*, No. 15 Cr. 101 (KBF), 2016 WL 2990831, at *12 (S.D.N.Y. Jan. 25, 2016) ...................................................................................................... 13, 16

*United States v. Lewis*, 35 F.3d 148 (4th Cir. 1994) ................................................... 28

*United States v. Lewis*, 517 F.3d 20 (1st Cir. 2008) ................................................... 32

*United States v. Libby*, 429 F. Supp. 2d 1 (D.D.C. 2006) ........................................... 24

*United States v. Manzano*, 945 F.3d 616 (2d Cir. 2019) ....................................... 13, 17

*United States v. McGuinness*, 764 F. Supp. 888 (S.D.N.Y. 1991) .............................. 11

*United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4-5 (S.D.N.Y. Aug. 17, 2018) ...................................................................................... 20, 22

*United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983) ........................................... 30, 33

*United States v. Payne*, 63 F.3d 1200 (2d Cir. 1995) ................................................. 8

*United States v. Pelullo*, 399 F.3d 197 (3d Cir. 2005).............................................. 21

*United States v. Perez*, 940 F. Supp. 540 (S.D.N.Y. 1996) ........................................ 10

*United States v. Persico*, 645 F.3d 85 (2d Cir. 2011) .............................................. 8

*United States v. Reese*, 933 F. Supp. 2d 579 (S.D.N.Y. 2013) ............................... 13, 16

*United States v. Rigas*, 258 F. Supp. 2d 299 (S.D.N.Y. 2003) .............................. 11, 12

*United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) ................................................ 20

*United States v. Rosado*, 728 F.2d 89 (2d Cir. 1984) ............................................... 17

*United States v. Rosenfield*, 469 F.2d 598 (3d Cir. 1972) ........................................ 15

*United States v. Ruggiero*, 472 F.2d 599 (2d Cir. 1973) ........................................... 7

*United States v. Sanders*, 17 F. Supp. 2d 141 (E.D.N.Y. 1998) ............................... 29

*United States v. Southland Corp.*, 760 F.2d 1366 (2d Cir. 1985)............................ 15

*United States v. Stein*, 424 F. Supp. 2d 720 (S.D.N.Y. 2006) .................................. 21

*United States v. Stevens*, 985 F.2d 1175 (2d Cir. 1993) ......................................... 9, 12

*United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997).............................................. 12

*United States v. Underwood*, No. 04 Cr. 424 (RWS), 2005 WL 927012, at *1
  (S.D.N.Y. Apr. 21, 2005)........................................................................................ 10

*United States v. Upton*, 856 F. Supp. 727 (E.D.N.Y. 1994) ..................................... 21

*United States v. Volpe*, 42 F. Supp. 2d 204 (E.D.N.Y. 1999)................................... 24

*United States v. Washington*, 705 F.2d 489 (D.C. Cir. 1983).............................. 14, 15

*United States v. White*, 972 F.2d 16 (2d Cir. 1992).................................................. 33

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003).................................................. 19

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Michael Thomas's motion to compel discovery.  (Dkt. No. 33) ("Mot.").  Thomas seeks an order compelling the Government to collect materials that are not in its possession, not discoverable under any legal basis, and not related to any legally cognizable defense.  Thomas's motion is entirely without merit and should be denied.[1]

Thomas concedes that the Government has produced a "multitude" of discovery directly relevant to the charges against him.  (Mot. 6).  Nonetheless, he seeks an order compelling the Government to collect and produce additional materials that he believes would support his purported defenses, namely, that he committed the offenses because of staffing issues and supervisory lapses, and that he was singled out for prosecution.  Specifically, Thomas seeks: (i) a copy of a report being prepared by the Department of Justice, Office of the Inspector General ("DOJ-OIG"), which does not yet exist and would principally be based on the same primary materials that the Government produced to Thomas in December 2019 (Mot. 5, 8-9); (ii) reports and documents prepared by the Bureau of Prisons ("BOP") and other agencies who were not and are not members of the prosecution team (Mot. 6-7); (iii) reports and documents related to "any and all [Metropolitan Correctional Center ("MCC")] employees" who have engaged in "the same or similar conduct," including an incident in "2005 or 2006" where officers failed to conduct counts or rounds and an inmate committed suicide (Mot. 6); and (iv) reports, statistics, and documents related to purported staffing issues, supervisory lapses, and the application of BOP

---

[1] Tova Noel did not file any pretrial motions, and has not joined in Thomas's pretrial motions.  *See* Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely.  But a court may consider the defense, objection, or request if the party shows good cause.").

policies which relate to the "much larger context" at the BOP (Mot. 6, 7, 9, 10).

As an initial matter, the Government has satisfied its Rule 16, *Brady*, and *Giglio* obligations and is not in possession of the additional materials that Thomas seeks.  More importantly, Thomas is not entitled to compel the Government to collect the additional records for at least four separate reasons.  *First*, the records are not "material" to preparing a defense because they are wholly irrelevant to the false statement charges against Thomas and are intended to prompt jurors to nullify the charges against him.  *Second*, the BOP records Thomas seeks are not in the "possession" of the prosecution team, and there is no legal basis for compelling the Government to collect materials from other agencies or components of the Department of Justice who are not and were not part of the criminal investigation that led to the charges against Thomas.  *Third*, there is no legal basis to require the Government to produce a draft of the report being prepared by the DOJ-OIG, which is subject to the deliberative process privilege.  *Fourth*, Thomas is not entitled to discovery relating to what happened to other MCC employees when they "falsif[ied] the same documents," (Mot. 6), because he has utterly failed to identify evidence that the decision to prosecute him had a discriminatory effect and was motivated by a discriminatory purpose. Thomas's motion should be denied in all respects.

## STATEMENT OF FACTS

### I.    The Indictment

Indictment 19 Cr. 830 (AT) (the "Indictment") was filed on November 19, 2019, charging defendants Tova Noel and Michael Thomas in six counts: (i) conspiring to defraud the United States and to make or use a false writing or document, in violation of Title 18, United States Code, Section 371 (Count One); and (ii) five counts of making or using a false writing or document, in violation of Title 18, United States Code, Sections 1001(a)(3) and 3 (Counts Two through Six).

Both defendants are charged in Counts One, Four, Five, and Six; defendant Noel only is charged in Counts Two and Three.  The charges in the Indictment stem from a fourteen-hour time period, from approximately 4:00 p.m. on August 9, 2019 to approximately 6:30 a.m. the following day, August 10, 2019, when the defendants were working as correctional officers at the MCC.  As charged in the Indictment, during that time period, the defendants failed to perform mandated counts of prisoners housed in MCC's Special Housing Unit ("SHU"), but nevertheless signed false certifications attesting to having conducted those counts, when, in fact, no counts or rounds of the SHU were conducted from approximately 10:30 p.m. on August 9 to 6:30 a.m. on August 10.

## II.     Pretrial Discovery and the Defendants' Request for Additional Materials

### A.     *The Government's Discovery Production*

At the initial pretrial conference on November 25, 2019, the Court set a discovery deadline of December 31, 2019.  On that date, pursuant to a protective order entered by the Court, the Government made a substantial discovery production to both defendants, consisting in part of the following: surveillance video for the common area of the SHU; analysis of the computers used by Noel and Thomas from August 9 to 10, 2019; count slips and thirty-minute round reports; MCC phone records; personnel records and prior work schedules; and reports and notes of witness interviews prepared by agents from the Federal Bureau of Investigation ("FBI") and the DOJ-OIG who were participating in the investigation.[2]

Subsequently, the Government made three additional discovery productions, much more limited in scope.  On January 23, 2020, the Government produced additional interview reports and

---

[2] The Government does not concede that production of all of the materials was required under Rule 16, but nonetheless produced the materials in its possession out of an abundance of caution.

notes.  On January 30, 2020,[3] the Government reproduced video surveillance footage with timestamps, and on March 16, 2020, the Government produced forensic reports for three electronic devices and a photograph of a text message.

### B.   *Defense Requests for Additional Discovery Materials*

The defendants have made a number of requests for additional discovery materials, in response to which the Government has provided information in its possession as consistent with Rule 16 and its other disclosure obligations, as described below.

At the initial pretrial conference on November 11, 2019, Thomas, through counsel, raised the issue of an "ongoing . . . report" by the Office of the Inspector General and requested the "status" of the report and when it would be completed.[4]  (Conf. Tr., Nov. 25, 2019, at 3-4, 7-9). In response, the Government explained that "to the extent counsel's asking for a summary of the results of the criminal investigation, obviously we'll be turning over in discovery all of the underlying results of the criminal investigation. . . . I don't have a time frame on the [I]nspector [G]eneral report, but the [G]overnment will produce to the defense all of the relevant discovery materials in this matter, which includes the Rule 16 materials relevant to the criminal charges that have been brought against the defendants."  (*Id.* at 7-8).  As there was no pending issue to resolve, the Court declined to rule at that time.

On January 29, 2020, Thomas and Noel each submitted discovery requests to the Government.  Thomas's letter reiterated his prior request for "any and all reports, memorandums,

---

[3] The January 30, 2020 production was made to Noel's counsel on January 24, 2020, while the Government was still waiting for an additional hard drive from Thomas's counsel.

[4] Based on conversations with attorneys at DOJ-OIG tasked with preparing this report, the Government understands that the report will likely focus on the events surrounding the death of Jeffrey Epstein and BOP policies and procedures.

written statements, photos, videos, and incident reports created, manufactured or possessed by the United States Inspector General."  Noel's January 29 letter sought materials related to the MCC video surveillance system and additional surveillance video, as well as assistance locating particular information in the surveillance video footage that the Government had previously produced in discovery.

At the pretrial conference the following day, Thomas, through counsel, renewed his request for "whatever investigation was done and whatever information there is that is discoverable with respect to the Inspector General's report."  (Conf. Tr., Jan. 30, 2020, at 6, 9).  The Court directed Thomas to file a motion formalizing his request.  (*Id.* at 9).[5]

The Government responded to the defendants' discovery requests by letter dated March 14, 2020.  As for Thomas's request for materials related to any forthcoming Inspector General's report, the Government referred Thomas to its prior response as stated at the November 25, 2019 pretrial conference.  With respect to Noel's requests for additional materials related to the MCC video surveillance system, the Government explained that to the extent such materials were in the Government's possession and currently subject to disclosure, they had already been produced.  In addition, the Government provided additional information answering certain of Noel's questions, including video timestamps to assist with review of the surveillance footage.

On March 27, 2020, Thomas submitted another discovery request to the Government, seeking, among other things, information from the BOP regarding other correctional officers and information about the Government's charging decisions.  The Government responded by letter

---

[5] Thomas, through counsel, previewed that he would also likely file a motion to dismiss the indictment based on "selective prosecution."  (Conf. Tr., Jan. 30, 2020 at 6).  The deadline for filing motions, which was extended at counsel's request, has passed, and Thomas has failed to timely file a motion to dismiss.

dated April 1, 2020, explaining that any responsive information in the Government's possession and subject to disclosure had already been produced.  The letter further explained that to the extent the requests called for items not in the Government's possession or not subject to disclosure, Thomas had not identified any legal basis or authority for his requests and the Government was not aware of any authority requiring the Government to obtain or produce the requested information.

On April 9, 2020, Thomas filed the instant motion seeking an order from the Court compelling the Government to produce the following:

- The Inspector General's report investigating the death of Jeffrey Epstein and BOP policies and procedures (referred to herein as the "Inspector General's Report"), as well as all supporting memoranda and other documents, (Mot. 4-5);

- Any and all "reports generated by investigators within the [BOP] regarding the August 10, 2019 incident" as well as "documents, reports, witness statements and disciplinary records of any and all MCC employees who have engaged in the same or similar conduct," including "results of any disciplinary proceedings and documents maintained by the BOP regarding the discipline or administrative adjudication of any other employees who have failed to conduct rounds or inmate counts," (Mot. 4, 6);

- Any previously undisclosed reports, witness statements, and documents created by "any other federal agencies that investigated the circumstances surrounding the death of Jeffrey Epstein," (Mot. 4, 7).

For the reasons that follow, Thomas is not entitled to the materials he seeks, and his motion should be denied.

## ARGUMENT

**I.     Applicable Law**

   **A.     *Brady & Giglio***

The Government has an obligation under the Due Process Clause to make a timely disclosure of any exculpatory or impeaching evidence that is material and in its possession.  *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *see also United States v. Coppa*, 267 F.3d 132, 139-40 (2d Cir. 2001).  Evidence is "material" in this sense only if "its suppression undermines confidence in the outcome of a trial."  *United States v. Bagley*, 473 U.S. 667, 678 (1985).  "The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."  *United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir. 1982) (citing *United States v. Ruggiero*, 472 F.2d 599, 604 (2d Cir. 1973)).

Impeachment evidence is material only "where the witness at issue supplied the only evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case."  *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal quotation marks and citations omitted).  Similarly, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or is subject to extensive attack by reason of other evidence, the undisclosed evidence may properly be viewed as cumulative, and hence not material."  *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011) (citing cases).  With regard to the timing of disclosing material under *Giglio*, the Second Circuit, in *Coppa*, rejected the argument that such material should be disclosed when defendants make a

7

demand for it.  267 F.3d at 146.  The court held that as a general rule, *Brady* and its progeny do not require immediate disclosure of all impeachment material upon a defendant's request.  *Id.*  It found that the time required for its effective use would depend on the materiality of the evidence as well as the particular circumstances of the case, and suggested that district courts may order disclosure of material it deems material as a matter of case management.  *Id.*  As described above, the Government disclosed reports and notes of witness statements as part of its discovery productions, such that the defendants will have possessed substantial material that may serve as potential impeachment evidence for one year in advance of trial.

### B.      Rule 16

Rule 16 of the Federal Rules of Criminal Procedure requires the Government to permit the defendants to inspect and copy documents and objects within the Government's possession, custody, or control if the items are material to preparing the defense, if the Government intends to use them in its case-in-chief at trial, or if the items were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).  An item is "material to preparing the defense" under Rule 16 "if it could be used to counter the Government's case or bolster a defense."  *United States v. Stevens*, 985 F.2d 1175, 1180-81 (2d Cir. 1993).

## II.     Thomas is Not Entitled to Additional Materials

### A.      The Government Has Satisfied its Discovery and Disclosure Obligations

As an initial matter, the Government is aware of, has satisfied, and will continue to satisfy its discovery and disclosure obligations.

The Government has met its Rule 16 discovery and disclosure obligations.  As set forth above, the Government has produced an expansive amount of discovery, which includes among other things, hundreds of hours of video surveillance going back to July 5, 2019 (despite the fact

that the Indictment relates to a 14-hour time period); count slips, thirty minute round forms, and staffing rosters for the three-week period surrounding Epstein's suicide; internal MCC phone records; employee files and staffing history for Noel and Thomas; and a wide range of written Bureau of Prison policies and regulations, among other documents and materials.  In addition and while not required by Rule 16, the Government produced months in advance of trial (and now, approximately a year in advance of trial) statements for all of the witnesses interviewed during the investigation.  While the Government is not aware of any other information that warrants disclosure, it will produce any such materials to the extent it becomes aware of them.

The Government is likewise aware of, and has complied with, its *Brady* and *Giglio* obligations.  The Government has already produced any evidence in its possession that is arguably exculpatory or impeaching.  To the extent *Giglio* material exists in notes of witness statements or attorney proffers made on behalf of witnesses that have not already been produced, the Government intends to comply with its obligations and will make such disclosures sufficiently in advance of trial to be effectively used.  Based on that representation alone, the defendant's motion should be denied.  *See United States v. Gonzalez*, No. 19 Cr. 123-2 (NRB), 2020 WL 1809293, at *5 (S.D.N.Y. Apr. 9, 2020) (denying a motion to compel because the government "represented that it had complied with and would continue to comply with its *Brady* and Rule 16 obligations); *United States v. Underwood*, No. 04 Cr. 424 (RWS), 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005) ("The courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to *Brady* where the government has made such good faith representations."); *United States v. Perez*, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (denying defendant's motion to compel production of *Brady* based on Government's representation that it was aware of and had complied with *Brady*).

### B.       The Requested Records Are Not "Material" to Preparing a Defense and Are Sought for the Impermissible Purpose of Jury Nullification

All of the records Thomas seeks in his motion are not "material to preparing a defense" under Rule 16, and are not exculpatory under *Brady*, because they are irrelevant to countering the Government's false statements case or advancing a legitimate defense.  Instead, Thomas seeks evidence of staffing shortages, working conditions, the implementation of BOP policies, supervisory lapses, and instances in which other BOP employees were not prosecuted so that he can engage in attempted jury nullification by arguing that those conditions "led" to the criminal conduct that he is charged with and are a reason to acquit him.  (Mot. 5, 7, 9, 14).  Thomas is not entitled to records—and certainly would not be entitled to introduce any such evidence at trial— that would aid in that nullification effort because Rule 16 only entitles a defendant to discovery for purposes of bolstering a defense to the Government's case in chief, not the merits of the decision to prosecute.

### 1.       Applicable Law

An item or record that the Government does not intend to use in its case-in-chief at trial is discoverable under Rule 16(a)(1)(E) only if it "is material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E).  "It is [a defendant's] burden to make a prima facie showing that documents sought under Rule 16(a)(1)(E)(i) are material to preparing the defense."  *United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003) (citing *United States v. McGuinness*, 764 F. Supp. 888, 894 (S.D.N.Y. 1991)).  As noted above, an item is "material to preparing the defense" under Rule 16 "if it could be used to counter the Government's case or bolster a defense."  *Stevens*, 985 F.2d at 1180-81.  The defendant must "offer more than the conclusory allegation that the requested evidence is material."  *Rigas*, 258 F. Supp. 2d at 307 (internal citation omitted).

As the Supreme Court held in *United States v. Armstrong*, while Rule 16 authorizes

defendants to examine records "material to the preparation of their defense against the Government's case in chief," it does not authorize discovery for defenses that do not rebut the "merits to the criminal charge itself." 517 U.S. 456, 462-63 (1996) (holding that Rule 16 does not authorize discovery relating to a selective prosecution claim). For that reason, because evidence that would be impermissibly used to encourage jury nullification does not relate to the merits of the criminal charges, it is not discoverable under Rule 16. *Id.; see also United States v. Defreitas*, No. 07 Cr. 543 (DLI), 2011 WL 317964, at \*10 (E.D.N.Y. Jan. 31, 2011) (rejecting discovery request related to something that is "not a defense" and has "nothing to do with the issues of whether defendants . . . committed the . . . crimes charged"). Since jury nullification is "a practice whereby a juror votes in purposeful disregard of the evidence," *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997), or "out of compassion or compromise," *Standefer v. United States*, 447 U.S. 10, 22 (1980) (internal citation omitted), it is not error for a court to preclude evidence that is "not a valid defense" aimed at nullification, *United States v. Edwards*, 101 F.3d 17, 19-20 (2d Cir. 1996). *See also United States v. Reese*, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) (precluding defense arguments or evidence related to "possible consequences for the defendant of conviction, jury nullification, and the Government's motive and conduct in prosecuting [defendant]"); *United States v. Levin*, No. 15 Cr. 101 (KBF), 2016 WL 299031, at \*12 (S.D.N.Y. Jan. 25, 2016) (barring evidence "intended to elicit sympathy" and attempts to "use jury nullification as a defense" as "plainly improper"). Indeed, "trial courts have the duty to forestall or prevent jury nullification" even where the defendant or the court may "strongly disagree[] with the government's charging decisions and the attendant sentencing consequences." *United States v. Manzano*, 945 F.3d 616, 626-27 (2d Cir. 2019) (citations & quotation marks omitted).

11

##### 2.     Discussion

Thomas's motion makes clear that he intends for his principal defense at trial to be that—irrespective of his guilt or innocence of the false statements charges—he should be acquitted because the MCC was understaffed, Thomas was overworked, his supervisors did not catch his crime in the moment, and falsification of count slips is rampant within the BOP.  (*See* Mot. 3 ("staffing issues, staffing shortages, supervisory lapses and the enforcement/interpretation of BOP procedures go to the heart of his defense to the government's criminal allegations"); 9 ("Mr. Thomas will assert that the rampant staffing shortages present at the MCC in August of 2019 led to the conduct for which Mr. Thomas is now criminally charged.")).  Thomas has failed to meet his burden in establishing the materiality of discovery about these topics to preparing a valid defense because the materials he seeks do not rebut the merits of the criminal charges and instead would be impermissibly used to encourage jury nullification.

The purported reasons for Thomas's decision to falsify count slips—being tired, overworked, or understaffed—are not a valid legal defense, and therefore evidence related to those issues is not relevant.  Put simply, were the jury to find beyond a reasonable doubt that Thomas intentionally made materially false statements and *also* that did so while tired or overworked, it would still be required to convict him.  *See United States v. Carr*, 424 F.3d 213, 221 (2d Cir. 2005) (holding that "it was proper for the district court to instruct the jury that it had a duty to find [the defendant] guilty if the government proved beyond a reasonable doubt every element of the offense with which he was charged" (internal citation omitted)).

None of Thomas's proffered excuses relate to proving or rebutting the elements of a violation of 18 U.S.C. § 1001(a)(3) as they do not concern whether a writing or entry was false, whether it was material to a matter within the jurisdiction of the BOP, or whether he knowingly

and willfully made a false statement. Nor are those excuses relevant to whether Thomas had a criminal agreement with his co-defendant. Indeed, evidence as to a defendant's purportedly innocent motive in a false statement case is irrelevant to the question of intent. *See United States v. Washington*, 705 F.2d 489, 493-94 (D.C. Cir. 1983) (holding that proof of a good or innocent motive is not probative of intent where the mens rea is "knowingly and willfully"); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 154 n.49 (2d Cir. 2008) (citing *Washington*, 705 F.2d at 493, for "the irrelevance of a motive to the question of whether conduct is intentional"); *United States v. George*, 786 F. Supp. 56, 64 (D.D.C. 1992) (rejecting the defendant's "context argument" for why materials could be relevant to the crime charged).

For the same reasons, "other people were doing it" is not a defense to a false statements or conspiracy charge because the conduct of other BOP employees is irrelevant to each of the foregoing elements. Thomas argues that because he was aware of incidents where BOP employees falsified records and "their conduct did not lead to their indictment or incarceration," evidence of what other BOP employees have done is relevant to his intent. (Mot. 6.) Not so. Whether Thomas believed falsifying records was illegal or was subject to criminal penalties is not relevant to the charges against him. *See United States v. Southland Corp.*, 760 F.2d 1366, 1372 (2d Cir. 1985) ("Ignorance of the law is no defense to a charge of purposeful and intentional action."); *United States v. Rosenfield*, 469 F.2d 598, 601 n.2 (3d Cir. 1972) ("As long as the inexcusable intent is present, it is not necessary that the defendant know that his conduct is subject to criminal penalties."). And in any event, it would be fundamentally inappropriate, and extremely prejudicial, for the jury to consider other individuals not on trial or otherwise relevant to the conduct charged here, in evaluating the guilt or innocence of the defendant. *See United States v. Gibbons*, 602 F.2d 1044, 1048 (2d Cir. 1979) (approving instruction that jury was not to consider individuals who

13

were not on trial).

Thomas's efforts to garner sympathy, put the Government on trial, and deflect blame for his own criminal actions plainly sound in nullification. *See Reese*, 933 F. Supp. 2d at 583-84; *Levin*, 2016 WL 2990831, at *12. Evidence on those points does not relate to whether the defendant committed the crimes charged, but rather is intended to elicit sympathy, compassion, or compromise from the jury. The records Thomas seeks are no more discoverable than the nullification evidence precluded in *Armstrong* and its progeny. *See Armstrong*, 517 U.S. at 462-63 (defendant not entitled to discovery on race of other narcotics defendants to aid in selective prosecution claim); *United States v. Delacruz*, No. 14 Cr. 815 (KBF), 2015 WL 2211943, at *4 (S.D.N.Y. May 12, 2015) (rejecting defendant's "demands for general information and statistics relating to the Government's use of sting operations"); *United States v. Floyd*, No. 99 Cr. 0234 (DAB), 1999 WL 476438, at *2 (S.D.N.Y. July 7, 1999) (rejecting discovery request for "background data, records and investigative reports" of the New York City Police Department ("NYPD") as well as information about NYPD officers' conduct in other cases); *Defreitas*, 2011 WL 317964, at *10 (rejecting discovery demands related to a "factual impossibility" defense to a conspiracy charge). It is the Court's "duty to forestall or prevent" jury nullification. *Manzano*, 945 F.3d at 627 (holding that "District courts have a duty to forestall or prevent [jury nullification arguments] and the district court in this case abdicated its duty by ruling that defense counsel could argue jury nullification."); *see also United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing trial court for inviting nullification by permitting the defendants to mount a "political defense" and stating that it was an "erroneous assumption that good motive for committing a crime is inconsistent with criminal intent").

In sum, much of the additional discovery Thomas seeks in his motion relates to legally

irrelevant matters, such as what "led" him to the criminal conduct or the broader "context" in which he committed specific criminal acts.  There is no basis to compel production of evidence related to those matters under Rule 16, *Brady*, or *Giglio* because they are not material and because the evidence sought is in furtherance of a transparent attempt at nullification.  Thomas's motion should be denied on this basis alone.

### C.   The Government is Not Required to Collect Materials From Agencies Who Were Not Part of the Prosecution Team

Thomas asks the Court to compel the Government to produce "any reports, witness statements, memorandum, and documents from any *separate investigation* conducted by the BOP," "documents, reports, witness statements and disciplinary records of any and all MCC employees who have engaged in the same or similar conduct," and any previously undisclosed reports, witness statements, and documents created by "any other federal agencies that investigated the circumstances surrounding the death of Jeffrey Epstein."  (Mot. 4, 7 (emphasis added)).  Even if Thomas had satisfied the materiality requirement under Rule 16 or *Brady* with respect to these items—and he has not—Thomas's motion would still fail because the materials he seeks are not in the prosecution team's possession.

The BOP is not, and never has been, part of the prosecution team.  Nor did the BOP conduct an investigation jointly or in coordination with the prosecution team.[6]  To require the Government to obtain and produce any records from the BOP from a separate investigation, as well as evidence that would support Thomas's purported (and improper, for the reasons discussed in Part II.B,

---

[6] The defendant claims, based on a CNN article, that the U.S. Marshal Service ("USMS") conducted an investigation.  The Government is unaware of such an investigation, and in any event, any such inquiry by the USMS was not conducted jointly or in coordination with the prosecution team.

*supra*) defenses, is not legally required and would impose a nearly insurmountable obligation on the Government of marshaling and reviewing information and data in the possession of an entirely separate entity.

### 1. Applicable Law

As described above, Rule 16, *Brady*, and *Giglio* apply to materials in the Government's "possession."   As a general matter, while "[a]n individual prosecutor is presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case, . . . knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor."   *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (citations omitted).   The imposition of such "an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis."   *Id.* (citation & quotation marks omitted); *see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (Government's discovery and disclosure obligations extend only to information in the custody of the prosecutor or "others acting on the government's behalf in the case").   Thus, discovery and disclosure obligations only extend "information known to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation."   *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (citation omitted).   *Brady* is not a basis to compel the Government to gather information in the possession of third parties on behalf of the defense.   *See United States v. Yousef*, 327 F.3d

56, 112 (2d Cir. 2003) (defendants were not deprived of due process by any alleged failure of U.S. government to help them obtain cooperation from foreign authorities).

In considering whether Rule 16 and *Brady* apply to records in the possession of another government agency, a prosecutor's duty extends to reviewing such evidence only where the Government conducts a "joint investigation" with that agency or branch of government.  *See United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) (affirming district court opinion holding that there was "no joint investigation with the [Securities and Exchange Commission ("SEC")]" and therefore the Government did not need to produce documents in the custody of the SEC); *United States v. Blaszczak*, 308 F. Supp. 3d 736, 742-43 (S.D.N.Y. 2018) (holding that the Government was not obligated to review SEC material for *Brady* where SEC was not involved in grand jury presentation, did not attend every interview, did not review documents gathered only by prosecution, and did not develop prosecutorial strategy); *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4-5 (S.D.N.Y. Aug. 17, 2018) (holding that the Government was not required to conduct a search because the [Public Company Accounting Oversight Board ("PCAOB")] was not involved in witness interviews or developing prosecutorial strategy, and the SEC was not involved in the grand jury presentation, reviewing the fruits of the Government's investigation, or developing prosecutorial strategy); *United States v. Collins*, 409 F. Supp. 3d 228, 241-42 (S.D.N.Y. 2019) (no joint investigation between Government and SEC); *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (Chin, J.) (no joint investigation between Government and New York Stock Exchange ("NYSE")); *United States v. Upton*, 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994) (holding that USAO and Federal Aviation Administration ("FAA") did not conduct a "joint investigation" even though the FAA provided two inspectors to assist the criminal investigation).

Moreover, even where agents from a component of an agency are involved in an investigation, that does not render the entirety of an agency part of the prosecution team. *See, e.g.*, *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) ("While the prosecution's [Rule 16] disclosure obligation in some circumstances may extend to materials beyond the knowledge of the individual prosecutors assigned to a case, it does not extend to the collective knowledge of the entire United States government or even to the entire government agency concerned."); *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005) ("[T]hat other agents in the ([Department of Labor ("DOL")] participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team."); *see also United States v. Locascio*, 6 F.3d 924, 949 (2d Cir.1993) (refusing, for *Brady* purposes, to impute to AUSAs prosecuting that action with the assistance of certain FBI agents knowledge of reports prepared by FBI agents who were "uninvolved in the investigation or trial of the defendants"); *but see United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (holding that, in the context of a speedy trial motion, other members of the Department of Justice who were involved in making decisions about timing and progress of the case were part of the "government" for Rule 16 purposes).

Thus, as the foregoing precedents recognize, the factors relevant in determining whether an agency or a component of an agency are part of the prosecution team, and therefore their records are in the "possession" of the Government include whether the agency or component: "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Middendorf*, 2018 WL 3956494, at *4.

2.      **Discussion**

As described above, the Government has produced *Brady*, *Giglio*, and Rule 16 material in the possession of the prosecutors and agents at the United States Attorney's Office, the FBI, and the DOJ-OIG who have worked on this investigation and prosecution.  Thomas seeks materials that are not in the possession of the United States Attorney's Office or the case teams at the FBI and DOJ-OIG who worked on this criminal investigation.

Thomas seeks a variety of records from the BOP.  The BOP was not a member of the prosecution team, and no employee of the BOP performed investigative duties or made strategic decisions about the prosecution of the case.  Indeed, the Government obtained records from the MCC (a component of the BOP) pursuant to a grand jury subpoena to the institution and written requests to the MCC's legal department.  Likewise, the Government was not involved in any internal BOP investigation into the circumstances surrounding Epstein's suicide.  Notwithstanding those facts, the defendant asserts that the BOP is "allied with the prosecution" and therefore the Government's discovery and disclosure obligations extend to materials exclusively in the possession of the BOP.  That argument is not only belied by the facts, but it is settled law in this Circuit that a prosecutor's duty extends to reviewing the materials in the possession, custody, or control of another agency for *Brady* evidence only where the Government conducts a "joint investigation" with that agency.  None of the indicia of a "joint" or "allied" prosecution, as discussed in the foregoing case law, is present here.  A straightforward application of those factors considered by courts in this Circuit reveals that the investigation was in no way joint: the BOP did not participate in the prosecution's witness interviews; it was not involved in presenting the case to the grand jury; no BOP employees aided in the review of documents gathered by the

Government; the BOP was not involved in the strategic decisions; and no BOP personnel accompanied the prosecution to court proceedings.

Moreover, even if the BOP had conducted a joint investigation with the Government into the events of August 9 and 10, 2019 (which they did not), Thomas has offered no reason to believe that most if not all of the records that he seeks—such as records of other instances of BOP employees failing to conduct rounds and counts—would be part of the BOP's investigation. There is simply no basis to seek an order compelling the Government to search for records in the possession of the BOP, without any temporal limitation or factual nexus to the charged case, regarding staffing shortages at the MCC, other instances where BOP employees failed to conduct required rounds and counts, and disciplinary records for other BOP employees who have at other times also allegedly falsified records.

The cases Thomas cites do not support a contrary result. In *United States v. Bryan*, the Ninth Circuit concluded that the government could not limit its discovery obligations to documents located in the district of prosecution since the case came out of a single, nationwide IRS investigation. 868 F.2d 1032, 1035-37 (9th Cir. 1989). In reaching that holding, the Circuit explained that "a federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant" and that Rule 16's disclosure requirements are cabined to anything in the possession "of any federal agency participating in the *same* investigation of the defendant." *Id.* at 1036 (emphasis added). Similarly, in *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999), the court explained, in denying the defendant's discovery motion, that "[c]ourts have construed the term 'government' . . . narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general." And while the court in *United States v. Libby*, 429 F. Supp.

2d 1, 9 (D.D.C. 2006), required the prosecutors to obtain records from the Office of the Vice President and the Central Intelligence Agency, even though those parts of government did not participate in the grand jury investigation, that holding was an outlier, which has never been cited by another court, and the decision itself has never been cited in this Circuit.

Finally, even if such materials had any conceivable relevance to the charges at hand (which, as discussed above, they do not), asking the Government to conduct a broad canvassing of the BOP's records—including searching databases located out of state, reviewing large quantities of documents, attempting to pull archived records going back as far as 2005, and parsing through attorney work product—would be inordinately time consuming and burdensome for attorneys for the Government, which does not have custody of the files, is not familiar with the files, and knows of no effective way to search them.  It would, as the Circuit warned against in *Avellino*, "condemn the prosecution of criminal cases to a state of paralysis."  136 F.3d at 255.  Such a result is not legally required by Rule 16, *Brady*, or *Giglio*, and therefore Thomas's motion should be denied.

### D.     Any Draft Inspector General Report is Not Subject to Disclosure

Thomas argues that any report by the Inspector General and related materials must be produced because he speculates that such a report will address systemic issues at the BOP, including purported staffing shortages at the MCC.  (Mot. 5, 9-10).  For the reasons set forth above, any draft Inspector General Report is not discoverable because the issues Thomas believes it will discuss are not material to the preparation of a valid defense, *see* Part II.B, and the draft reports, to the extent they exist, are protected from disclosure by the deliberative process privilege.  While the prosecution team has had no involvement in writing the Inspector General Report, the Government understands that those attorneys from DOJ-OIG responsible for writing the Report have not yet completed a draft, and do not anticipate completing the Report in the near term.  As

such, there are no drafts of the Report to disclose, and Thomas's motion can be denied on that reason alone. Moreover, Thomas's request for draft versions of the Report—which do not yet exist—fails for two additional reasons.

*First*, drafts of the Inspector General's Report, which has not been completed and will likely make recommendations about reforms at the BOP, are protected from disclosure under the deliberative process privilege, which "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co*., 421 U.S. 132, 150 (1975)). The privilege is applicable in criminal and civil cases involving the government. *See, e.g., United States v. Fernandez*, 231 F.3d 1240, 1246-47 (9th Cir. 2000) (government's death penalty evaluation form and prosecution memoranda were shielded from discovery under the deliberative process privilege); *In re Sealed Case*, 121 F.3d 729, 737-40 (D.C. Cir. 1997) (indicating that the privilege applies to grand jury subpoenas); *United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998) (internal memoranda covered by privilege). "In order for the privilege to apply, the agency record at issue must be (1) an inter-agency or intra-agency memorandum or letter; (2) pre-decisional; and (3) deliberative." *Nat'l Res. Def. Council v. U.S. Envtl. Prot. Agency*, 954 F.3d 150, 155 (2d Cir. 2020). "It is well-settled that draft documents, by their very nature, are typically pre-decisional and deliberative [because] [t]hey reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation by their authors or by their superiors." *Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 453 (S.D.N.Y. 2018) (quoting *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 518 (S.D.N.Y. 2010)).

The Inspector General's Report is both pre-decisional and deliberative. A full draft has not

been completed, let alone reached a point where the final version will be disclosed to the public. It is also deliberative in that it will likely make recommendations about the BOP, and those recommendations will be under discussion within the Office of the Inspector General prior to being finalized and publicly announced. Internal deliberations are an important tool for agencies in reaching decisions, including recommendations in DOJ-OIG reports. The ability to have these discussions is important in identifying a broad range of policy and legal issues. Here, disclosure of any draft report or other work product related to the preparation of the Report will undermine the DOJ-OIG's ability to engage in meaningful discussions of the issues at the BOP relating to inmate security and staffing, among other topics, and will potentially stifle rigorous discourse on the issues. Accordingly, Thomas's motion should be denied for the reason that the materials sought are protected by the deliberative process privilege. *Klamath*, 532 U.S. at 9.

*Second*, Thomas has offered no support for his contention that drafts of the Inspector General's Report itself (and any related work product)—as opposed to the underlying materials upon which the Report is based—are subject to disclosure. To the extent that the forthcoming Inspector General's Report relies on information gathered during the instant investigation and prosecution, those underlying materials—which focus primarily on the events of August 9 and 10, 2019, the incarceration of Jeffrey Epstein, and related MCC records—have already been disclosed to the defendants. Thomas contends that those tasked with preparing the Report may "possibl[y]" have generated additional witness statements and "other information" that has not been produced by the Government to date. (Mot. 5). Thomas provides no support for such assertions besides mere speculation. The prosecution has inquired of the Washington D.C.-based attorneys who are preparing the Inspector General's Report. Based on those conversations, it is the prosecution's understanding that those attorneys have not conducted any additional interviews or otherwise

discovered any potential *Brady* material.  As such, given that the prosecution has already produced

in discovery all of the materials it provided to the DOJ-OIG attorneys preparing the Report, the

underlying materials for the Report would be merely cumulative of information in the defendants'

possession.  Any analysis of those materials by the attorneys preparing the Inspector General's

Report is not subject to disclosure pursuant to Rule 16 and cannot constitute *Brady* material.  *See*

*United States v. Lewis*, 35 F.3d 148, 150 (4th Cir. 1994) (noting generally that "nothing contained

in [an] OIG report would ordinarily have been discoverable").

At bottom, Thomas has not cited a single authority requiring the production of a draft,

unpublished report by an inspector general or related work product, and such production is not

required by Rule 16, *Brady*, *Giglio*, or any other disclosure obligation.

### E.     Thomas Has Not Carried His Burden With Respect to Discovery of Material in Support of a Selective Prosecution Claim

Thomas seeks "information and statistics that show the conduct in which the defendant is

being charged with a crime were . . . rampant throughout the BOP" and that the application of

criminal laws to him is "possibl[y] discriminatory."  (Mot. 7.)  This request, which is effectively a

demand for discovery in furtherance of a selective prosecution claim, should be denied not only

for the reasons set forth in Section II.B, but also because Thomas has not made the requisite

showing that is necessary to obtain discovery for a selective prosecution claim.  Indeed, Thomas

has failed to put forth *any* evidence that his prosecution was the result of discriminatory effect or

discriminatory purpose.

#### 1.     Applicable Law

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself,

but an independent assertion that the prosecutor has brought the charge for reasons forbidden by

the Constitution."  *Armstrong*, 517 U.S. at 468.  The standard to prove this defense is "a demanding

24

one," *id.*, as the defendant must "overcome the strong presumption of regularity on the part of federal prosecutors, and 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *United States v. Sanders*, 17 F. Supp. 2d 141, 144 (E.D.N.Y. 1998) (quoting *Armstrong*, 517 U.S. at 464), *aff'd*, 211 F.3d 711 (2d Cir. 2000).

A defendant claiming selective prosecution must present "clear evidence" that the decision to prosecute not only (1) "had a discriminatory effect" but was also (2) "motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465; *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983). "The discriminatory effect prong requires a showing that 'similarly situated individuals of a different [classification] were not prosecuted.'" *Alameh*, 341 F.3d at 173 (quoting *Armstrong*, 517 U.S. at 465). In other words, the defendant must show that he has been "singled out" as a member of a protected class. *Fares*, 978 F.2d at 59 (quoting *Moon*, 718 F.2d at 1229). To establish discriminatory purpose, the defendant must show that the Government's discriminatory "selection of the defendant for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* (internal quotation marks omitted; alteration incorporated). Where a defendant "has not shown that the Government prosecuted him because of" his protected status or conduct, his claim fails. *Id.*

In order to obtain discovery on a selective prosecution claim, the defendant must offer "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)); *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam) (to obtain discovery, a defendant accordingly first "must show some evidence of both discriminatory effect and discriminatory

intent"); *Fares*, 978 F.2d at 59 (same).  "[T]he showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims."  *Armstrong*, 517 U.S. at 464. "Mere assertions and generalized proffers on information and belief are insufficient" to meet this burden.  *Fares*, 978 F.2d at 59; *see, e.g.*, *Armstrong*, 517 U.S. at 470 (affidavits "recount[ing] hearsay and report[ing] personal conclusions based upon anecdotal evidence" are not sufficient to justify discovery); *Berrios*, 501 F.2d at 1211 (affidavit from defendant and attorney that they "believe[d]" there was improper motive and that "hundreds" of similarly situated individuals went unprosecuted was insufficient); *Alameh*, 341 F.3d at 174 (defendant's statistical analysis was insufficient to merit discovery on selective prosecution claim).

### 2.    Discussion

Thomas is not entitled to discovery that would relate to a selective procession or "discriminatory application" claim.  He has not carried his burden through a showing of any evidence that his prosecution for the charges in the Indictment is discriminatory.

As to the first required prong (discriminatory effect), Thomas has failed to put forth any evidence that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [him]."  *Fares*, 978 F.2d at 59 (internal quotation marks omitted).  "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced."  *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008).  Thomas alleges that there was an "almost identical incident in 2005 or 2006 wherein officers failed to conduct institutional counts or rounds and an inmate committed suicide," and one of the four officers involved was given a suspension.  (Mot. 6).  But Thomas is *not* charged with failing to conduct counts, he *is* charged with making false statements about those counts.  Even assuming

those officers "in 2005 or 2006" did falsify count slips, Thomas has still not put forth any evidence that those officers were "outside of the protected class," meaning of a different race, gender, nationality, or other protected class than Thomas.  In any event, even were the conduct similar, that Thomas can point to but a single other instance in which officers were not criminally prosecuted for that type of conduct hardly rings of selectiveness.

Similarly, Thomas points to the fact that "Officer-1" and "Officer-2" in the Indictment, who falsified count slips along with Tova Noel for the 4 p.m. and 10 p.m. institutional counts on August 9, 2019, respectively, were not prosecuted.  (Mot. 10; Ind. ¶¶ 15, 17, 19).  Even assuming *arguendo* that Officer-1 and Officer-2 were similarly situated to Thomas in that they each falsified one count slip—while Thomas falsified three—Thomas has failed to put forth any evidence that either Officer-1 or Officer-2 were outside of a "protected class" to which Thomas belongs.[7]  Nor could he: Officer-1 and Officer-2 are the same race, gender, and nationality as Thomas.  Thomas also questions why his supervisors or other MCC personnel who received and reviewed Thomas's false count slips were not also prosecuted with making false statements, but those supervisors or personnel are not similarly situated to Thomas because they did not actually make the false statements—Thomas did.  In addition, Courts have repeatedly held that the "suspicion [and] surmise" contained in Thomas's motion simply do not constitute "objective evidence" warranting discovery. *See United States v. White*, 972 F.2d 16, 19 (2d Cir. 1992) (conclusory allegations as to timing of indictment, Government's failure to follow internal guidelines, and improprieties of

---

[7] In so noting, the Government does not intend to comment on its deliberative process or the exercise of its prosecutorial discretion.  It notes these facts simply in response to Thomas's claim that the lack of charges against Officer-1, Officer-2, or Thomas's supervisors is in and of itself sufficient to meet the *defendant's burden* of establishing evidence of a similarly situated defendant who was not charged.

prosecutors not "objective evidence" warranting discovery); *Moon*, 718 F.2d at 1230 ("to engage in a collateral inquiry respecting prosecutorial motive, there must be more than mere suspicion or surmise"). Thomas's failure to make an evidentiary showing in support of the first required prong means that his motion for discovery on his selective prosecution claim must be denied. *See, e.g., Bass*, 536 U.S. at 863.

As to the second required prong, Thomas has failed to even allege, let alone establish, that the decision to prosecute him was motivated by a discriminatory purpose. To make such a showing, a defendant must establish that the Government's "selection of the defendant for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Fares*, 978 F.2d at 59 (internal quotation marks omitted; alteration incorporated). Thomas has not put forth any evidence whatsoever that the Government's decision to prosecute Thomas was based on anything other than his guilt. Instead, Thomas challenges the Government's decision to prosecute him *at all*, based on his wholly unsupported claim that the criminal conduct with which he is charged is "rampant" within the BOP. (Mot. 7). But the mere fact that other people were not prosecuted for committing the crime that Thomas committed does not mean that the Government harbored discriminatory intent in prosecuting Thomas.[8]

---

[8] Even if Thomas had not failed to carry his burden on his discovery motion (and he has failed), he would still not be entitled to put such evidence or argument regarding selective prosecution before a jury because the "selective prosecution defense is an issue for the court rather than the jury." *Regan*, 103 F.3d at 1082. The Second Circuit's directive makes sense. A claim of improper prosecutorial motive, whatever its ground or grounds, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. Instead, it is self-evidently "unrelated to factual innocence of the crime charged," which is the sole issue to be decided by the jury, and, as a result, the Court alone must resolve a claim of selective prosecution. *Regan*, 103 F.3d at 1082; *see also United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away

Having failed to meet the "rigorous standard" required to obtain discovery on a selective prosecution defense, Thomas's requests for discovery of any materials related to other incidents in which officers were not prosecuted for falsifying count slips should be denied. *Armstrong*, 517 U.S. at 464.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to compel should be denied.

Dated: New York, New York
       April 24, 2020

                                    Respectfully submitted,

                                    GEOFFREY S. BERMAN
                                    United States Attorney

                          By:     s/
                                    _____
                                    Rebekah Donaleski
                                    Jessica Lonergan
                                    Nicolas Roos
                                    Assistant United States Attorneys

---

from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"). Accordingly, courts routinely and correctly preclude defendants from raising these arguments at trial. *See Regan*, 103 F.3d at 1082 ("[W]e agree with the district court's decision to resolve for itself whether the government's conduct was lawful and to prevent Regan from presenting evidence on that subject."); *United States v. Raniere*, No. 18 Cr. 204 (NGG), Dkt. 622 (precluding argument regarding propriety of Government's prosecution), *United States v. Stewart*, Cr. No. 03-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude the defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant); *United States v. Larkin*, No. 12-CR-319, 2017 WL 928915, at *3 (D. Nev. Mar. 8, 2017) ("Defendant will be precluded from presenting evidence regarding the government's motive for prosecution in the instant case as such evidence is not relevant."); *United States v. Starks*, No. 10-CR-0160, 2012 WL 12878587, at *1 (N.D. Miss. July 20, 2012) (same).